May it please the Court, there are a few points I'd like to make with respect to the issues in this case. I need to raise the fact that the plaintiff ran away after he was stopped on July 17, 1998. That is something that no lawyer and certainly no judge would like, the fact that he ran away. However, I'd argue that in this case it didn't make any difference because there are disputed issues of material fact with respect to whether or not Defendant Hoagland had a right to detain the plaintiff on July 17, 1998. The reason running away matters is the notion that the guilty flee where none pursueth. It gives rise to suspicion all by itself. But I think that in the instant case, there are sufficient genuine issues of disputed facts that kind of rebut that assumption. And we're just going to have to wait and see. And I think that's what we're going to have to wait and see. And I think that's what we're going to have to wait and see. but held that it didn't matter anyhow because there was reasonable grounds or proposals to arrest on the 148 PC, delaying and obstructing. So whether or not there was at the outset either a reasonable detention and or an arrest with probable cause is germane to these issues. And I'd argue that there are many factors in this that point to the fact that there were, that there wasn't a proper detention and or arrest. I'd characterize the second encounter Defendant Hoagland had with the plaintiff on July 17, 1998, as an arrest that has the indicia of arrest. But you have to also look at the fact that a week and a half prior to the July 17, 1998, incident, Defendant Hoagland stops the plaintiff, asks, makes him show his ID, runs his ID, has him in front of his car on the hood. Plaintiff's black. What's the matter with that? The kid looks like he's under the curfew age. So the cop stops him and checks him to find out. That earlier encounter is not an issue in this case from the standpoint of whether or not he thought he was underage or not. But what it establishes is that Defendant Hoagland had met with Defendant Choi a week and a half earlier. And he's a police officer and should be able to make, retain in his memory that meeting. He looks at the ID of Mr. Choi. He sees that he's over 18. If I see you on the street a week and a half from now, I won't recognize you. I won't remember. Well, I think that you're not in the position of that particular police officer who's actually stopping these two young men. And he does know who they are because later he goes to the cousin, Moses Andaro, to get plaintiff's address. So he knew perfectly well who they were. And it does make a difference because he's a police officer trained to recognize, trained to look at identifications, and he doesn't spend a little amount of time. He has the police officer's lights, the patrol car's lights, trained on the plaintiff. So what I'm saying is there's a good probability that he did know who the plaintiff was and knew that he was over 18 when he gets, when he stops the plaintiff on July 17th, 1998. A second factor is that. I thought he hadn't seen his identification. I beg your pardon? I thought he had not seen his identification. Well, the week and a half earlier stop, there's a stop a week and a half before July 17th. And I'll point, that's at, I think I have the, ER 5758, Mr. Troia's declaration. A week and a half earlier, he looks at Mr. Troia's declaration, excuse me, identification, stops Mr. Troia, and actually gets out of his car and throws the identification on the ground and tells Mr. Troia and his cousin to get the hell out of there, all in addition of racial profiling that he would recollect that this was a person, went on July 17th, that this was a person he'd seen a week and a half earlier, and that maybe he had it in for Mr. Troia. What was the race aspect? I couldn't see it. It looked like Troia had been making himself a person of interest to this policeman, and there's nothing about race that distinguishes him from anyone else. What distinguishes him from anyone else is that he keeps hanging around and not doing what the cop says. Well, I'm not quite sure what your honor means when you say he keeps hanging around and doesn't do what the cop says. The cop keeps seeing him, and he tells him to leave, and the kid doesn't leave. He's not a kid. He's a 24-year-old adult. The kid doesn't stay. He's a 24-year-old adult, and after he's told to disperse, he waits a minute or two, and then starts to leave, and he's walking off, and he's stopped by Mr. Hoagland. So I don't think it can be said that he's not doing what the police officer said. What evidence is there that he's treated differently from other people who act the same way, except they're of some race that the policeman prefers? He's being treated differently because, first of all, he's the only person who's stopped and actually arrested. The other people are just left to go. I thought the others were all girls, and they all left and went home. They don't leave to go home until Mr. Hoagland crosses the street to tell them to get Mr. Chwaya. So they're not ‑‑ there's another issue, too, and that is that Mr. Hoagland's sole basis for singling out Mr. Chwaya, according to him, is that Mr. Chwaya said that he was 17 years old, and that's in Mr. Hoagland's declaration, and that he didn't live at that particular place, on Park Place. But that's a disputed issue of material fact. Mr. Hoagland at the trial said that he's ‑‑ at the criminal trial of Mr. Chwaya Mr. Chwaya was walking down the street with three females. Doesn't say anything about the race. All of a sudden, in this case, the three females become four females. That's in Mr. Hoagland's declaration. I think that's at around 108, 110. They become four black females, and that's controverted by Mr. Chwaya because Mr. Chwaya, in his declaration, stated that there were four Hispanic young women and one white woman. So there is a black issue here that is actually ‑‑ there's evidence of it from the encounter that existed prior to the July 17th incident, which is the subject of this case. So I think there are racial issues in this, and that what you see is a continuing attempt to cause the arrest and prosecution of Mr. Chwaya. That is race-based. You have the fact that Mr. Chwaya denies pushing Mr. Hoagland. What I heard you say is Chwaya is distinguished from the people with him in several respects. His sex, his race, and possibly his conformity to the policeman's orders. And you're assuming it's race that leads to the arrest. Well, I think that's one of the bases. The other basis is, of course, that there may just have been a simple vindictiveness against Mr. Chwaya. Evidence by the fact that he ‑‑ that Mr. Hoagland had seen him just a week and a half before. A month later, after the July 17th ‑‑ Now, that would, it seemed to me, work against you. If the policeman is out to get Chwaya because he thinks he's a local troublemaker, that's not racial. But there's no evidence in the record, nor is there any evidence, that Mr. Chwaya was anything other than a regular young guy walking down the street, or that he was a troublemaker, or that he had any engagement. No prior criminal record at all. No, no. Excuse me. There is a ‑‑ He was smart with the policeman a couple of times. I beg your pardon? He was smart with the policeman a couple of times. That tends to be how they define troublemakers. Well, the smart with the police officer, he was not smart with the police officer on the encounter a week and a half earlier. He was not smart with the police officer on July 17th, 1998, because he was trying to show him his identification. I don't think that would be considered to be smart to a police officer, because the police officer refused to look at the ID. If he'd looked at the identification, then it would have become immediately apparent that the curfew statute didn't apply to him. I mean, the whole point is that Mr. Hogan's basing his reasonable suspicion, or I would say actually probable cause, because I believe he conducted a terrorist assault when he first went across the street and told them to disperse. And he says, I asked them their ages. He says, Troy said, well, I'm 17 years old. Troy denies that. But I would say that the subsequent encounter on July 17th, and I have to keep giving the dates because there's this other arrest, amounted to an arrest without probable cause. And because Mr. Troy did try to show his identification, it would have been the easiest thing in the world just to look at the identification. Let me move you over to another area before we run out of time. Okay. That concerns me. On the malicious prosecution claim, there's something that confuses me there. The theory is that the policeman engaged in a malicious prosecution in the criminal case. But as I understand it, policemen don't prosecute. All they are is complaining witnesses. Right. And it's like the victim of a crime who's the complaining witness, and then the jury thinks that the victim lied or the victim misidentified the criminal. The victim lied about some critical element of whether it made it a crime or not. Since the policeman doesn't have the power to prosecute for a crime and is merely a complaining witness, how do you make out the elements of the tort? Well, the elements, I think, are made out because a false arrest report was filed, the stating that the or rather it's a genuine issue of material fact whether a false report was filed. And that false report was filed. What are the elements of the tort in California? I'll have it for you. Just a second. I think it's governed by Usher. I know what the policeman did wrong under your theory, but my concern is what are the elements of the tort? I think it's governed by – I'll have it in just a second. I have it here. It's in the reply brief. And the elements relate are in California the elements of malicious prosecution are, one, the initiation of criminal prosecution, malicious motivation, and lack of probable cause. And that's at the plaintiff's reply brief at 23. How do you get, number one, the initiation of prosecution when a policeman can't initiate a prosecution? A district attorney has to initiate the prosecution. If they illegally arrest plaintiff on a particular charge, they contrive charges to justify the arrest and then submit false police reports to the prosecutor, that ends up being – that satisfies that element, I believe. Is there a case that says that? I believe that's actually cited in the – I think we have a case to that effect in the first – in the opening brief. Logan v. Caterpillar, that's 246 F. 3rd, 912, 7th Circuit, 2001, denying summary judgment on plaintiff's claim that the defendant gave the police false information that resulted in the plaintiff being criminally prosecuted. So in this case, it's the police officer himself. He's giving the prosecutor false information that resulted in the plaintiff being criminally prosecuted. So you're saying he lies about the whole incident to begin with, which starts the whole ball of wax in the first place? I beg your pardon? It's lying about the whole incident, what you claim Holdman does, is what results in charges being filed. Is that what you're saying? Well, and I think a little more – basically, yes. With respect to the charge of battery on a police officer, it's most certainly because of an independent witness. You have Mr. Twyre going out to the neighborhood to look for independent witnesses, and that is a good – that's not something somebody who's pushed a police officer is usually going to do. And that's in Mr. Kressler's testimony. I think that's E-R-81 and E-2 – E-R-81 through 88, that he had done that, and therefore – and Mr. Kressler's note, he didn't push the police officer. He did run away. He just – or he went away, and that's that. So I don't think that – I think that's a genuine issue of disputed material fact. I think that that – there is grounds for the claim – malicious prosecution claim to go forward based on that. If the Court has any other questions, otherwise I'll reserve. Thank you. Thank you, counsel. Good morning. I'm sorry. Sylvia Havens is appearing on it. Just to clarify for me, this came up by virtue of a motion for summary judgment on qualified immunity? It came – yes, part one, no, part two. Yes, on the motion for summary judgment. The court found no constitutional violation. Right. But it was – it was basically you were urging qualified immunity as the defense here, right? That was one of the defenses that was raised. Under the saucier, of course, you have to address first whether there was a constitutional violation. Right. And that's how this was being analyzed, was a no qualified immunity. I believe that the order is that there was no constitutional violation. Right. But that would be the first prong of the saucier analysis, right? It is the first prong, yes, Your Honor. Okay. Yes, Your Honor. Because on page 9 of the district court's decision, he says, in order to establish whether the individual – the district court says whether the individual defendant should receive qualified immunity, the court must consider whether the law governing the official's conduct was clearly established. And so that's all he really rolled on, was – It was Judge Cooper, Your Honor. And she. I'm sorry. Me and the two judges are confused today.  Right. And that's what concerns me the most about this, actually, with respect to the malicious prosecution claim, because that was a Section 1983 malicious prosecution claim that they brought, right? It was, Your Honor, yes. Isn't it clearly established that the police violate constitutional rights if they fabricate a charge against you and make you stand trial for that charge? Well, I believe the way that was analyzed is I think Judge Cooper took it – what she found was that there was probable cause for the – I think that was her order. But looking at each of the elements, there's actually four elements. The first, they did not initiate it. The falsification of reports, there was actually a claim for falsification of reports. That was dismissed on a 12b-6. It's not on appeal. So we're not talking about the malicious prosecution. Correct. And you can't – the malicious prosecution is different than a falsification of a report claim. So we don't have a falsification of a report claim. We do have a malicious prosecution claim, which has to – The question we really should be analyzing is whether – this is why I'm going back to the qualified immunity – whether Hoagland and Cambrera have qualified immunity against the malicious prosecution claim. Well, I think you also have to analyze whether the elements of a malicious prosecution were met. That wasn't the question that was presented to the district court. The question was whether there was qualified immunity. I believe that – and I'll – I can double-check. I'm not 100 percent positive. But the motion for summary judgment was not brought solely on qualified immunity. It was brought on – Well, that's what the district court says. The district court says it's ruling on qualified immunity at page 9 of its opinion. And that's what I found confusing about this. All right. I – that might have been her angle, her approach. That doesn't mean that – That's the ruling that's being appealed. So that's what we have to look at is what she said, right? Well, we look at the undisputed facts, material facts, whether they're disputed facts and whether or not the malicious prosecution claim can survive even under a different reason. It could be a third. Yeah, you would look at that, too, but you would also look at whether she applied the law of qualified immunity correctly here. If it can be affirmed for any reason aside from the reason stated, there's nothing to prevent this Court from affirming summary judgment on the malicious prosecution claim even if it's not on a qualified immunity provided – I think it strikes me as wrong with saying that it's not clearly established that police officers should not fabricate arrest reports. And I think that's a very safe – that's a safe statement. I think it is. But I don't think that that in any way impacts summary judgment, the propriety of summary judgment being granted on the malicious prosecution claim because we have four elements. Is there – I'm just puzzled by it. When Usher, the Court, slid right past the issue that I raised, it looks as though nobody raised it, so they just assumed that when a policeman submits a false report that leads to an unfounded prosecution, that the policeman initiates prosecution even though it's just not how prosecutions get initiated. But they seem to assume it. I'm wondering if there's some other constitutional tort where a policeman lies to the prosecutor and causes the prosecutor to prosecute, say, an innocent man. That could be classified as a falsification of report claim, which has been dismissed in this case wasn't pursued. Not before this Court, and honestly, I didn't delve into – My impression is that there's a problem with that and a reason why that's not done, and that is that there are a lot of cases where a criminal prosecution falls apart for one reason or another and it looks as though the complaining witness lied and that they virtually never, in my experience anyway, prosecute the lying complaining witness. And there's a reason for that. And I think there's some kind of immunity for that. Immunity. Absolute immunity. And you need to – for public policy reasons, you need to hold that sacred. It's not just the officer taking the stand. Why isn't the policeman protected by that absolute immunity the same way as, say, if he was innocent, Kobe Bryant's accuser would be protected by the absolute immunity? I think they are. And there's cases cited in the answering brief that – to that effect. U.S. Supreme Court case. I can give the site, but it's in the – Briscoe v. LaHue. Supreme Court pointed out that the same danger exists in the case of potential liability for police officer witnesses. And it was discussing the immunity when an officer takes the stand. And I do think that that's a situation that we have here. Taking the stand is different. It is. Than actually – and that's why we do have three different defendants, and it needs to be borne in mind that we – Applying for the prosecutor to cause them to prosecute is what I'm focusing  Okay. And just – I – just for all of the causes of action, we're really just talking for this particular angle about Deputy Hoagland. Daphne Cabrera didn't falsify any report allegedly. As I understand it, Hoagland was the one who recited the battery to Cabrera, and Cabrera just wrote it down. I'm sorry. What are the facts as to what Cabrera did? Cabrera was not there at the scene at the time of the Terry stop. Deputy Hoagland came back. And I forget if he actually wrote a report or issued – I don't think the arrest warrant was made at that time. But he reported to his partner, Deputy Cabrera, what had happened. He then spoke with the plaintiff's mother. The plaintiff came into the station. Deputy Cabrera – he was identified to Deputy Cabrera. Deputy Cabrera said, I'll call you.  I thought – I can't follow what you're saying. I thought Hoagland said, Chwaya pushed me. And that's what the prosecution is based on. Hoagland says, Chwaya pushed me. Nobody else saw it except Chwaya and Hoagland. And the issue is if Hoagland was – and the prosecution was battery-based on Chwaya pushing Hoagland. And the question is if Hoagland lied when he said, Chwaya pushed me, is a 1983 tort made out. Is there any more to it? You're telling us a lot of other facts. And I can't figure out how they have any relevance. As to Deputy Cabrera, they have tremendous relevance. He's being sued for a religious prostitution as well. I thought Cabrera had no personal knowledge. He does not. And that's why he should be out for completely and totally different reasons. If you just said that, that would be a really good answer. We wouldn't spend five minutes on it. Okay. How do you distinguish the Albright v. Oliver case where Justice Ginsburg said, you know, a person facing serious criminal charges is hardly freed from the State's control upon his release from a police officer's physical grip. You know, and she goes on to talk about how it is a constitutional tort for a police officer to create a false report that causes a person to stand trial when they otherwise wouldn't. And there's a distinction in the case law between that being the immediate cause of the deprivation of the constitutional right and perjuring oneself on the stand. I understand that there's probably absolute immunity for lying on the witness stand, but not for this, you know, causing the whole trial to occur, because you're depriving the person of their freedom simply by making the false charges. I'd like to respond to that in specific context of what we've got here. We've got a malicious prosecution claim. Section 1883 malicious prosecution. Correct. In which none of the elements are met. They didn't initiate it. If you're talking about whether or not there can be other claims, et cetera, that aren't before this Court, I suppose we can go off into a discussion about that. No, I'm asking about this. Malicious prosecution. I actually think this is the strongest argument that the plaintiff has here. And I actually think it's probably a good one. It seems to me that this is just another, you know, walking around while black in bellflower case. And that happens all the time. So I'm trying to figure out whether this is that particular case and whether the police should be held accountable. Well, in this situation, Sheriff Baca, not involved. Deputy Cabrera, not involved. Malicious prosecution, they didn't, Deputy Hoagland didn't initiate it. There is no favorable termination on the merits. There is a hung jury, and it was dismissed after that, but not that there was a hung jury. That's not a favorable determination. It is not a favorable termination. A dismissal doesn't count? Not following a hung jury. A dismissal for lack of evidence, if the court found that there was a lack of evidence, but that's not what happened here. There's a full prosecution. Do you have cases in point on two of those propositions? Number one, that it's not initiation of a prosecution for the policeman to make a false report to the prosecutor? And number two, for the proposition that it's not a favorable termination on the merits if the case is dismissed after a hung jury? Just tell me the names of the cases. And I don't have them offhand. I can be more than willing to do supplemental briefing. Well, your chance for briefing was when you filed your brief, actually. If we want more briefs, we'll tell you. Okay. Isn't Cabrera's problem that the plaintiff alleges that once Hoagland makes a false report, Cabrera goes along with it and also claims that there are statements made that weren't made? The first prong, what is Deputy Cabrera supposed to do? Going along with it, he's got an officer telling him that the plaintiff ---- But Cabrera claims that he hears a conversation that the plaintiff denies he ever had. I believe that the record reflects that Cabrera heard the conversation that the plaintiff admits to. Plaintiff, his declaration, he says that in riding in the police car, he said that he was sorry that he ran a ---- he was sorry for what happened. Deputy Cabrera testifies that he was sorry that he ran away. During the criminal prosecution, Deputy Cabrera was specifically asked, did he apologize for running away? Yes, he did. Did he apologize for pushing Detective Hoagland? No, he did not. So is it inconsistent to say at one point he apologized for what happened in a declaration versus in a criminal testimony, did he apologize? Yes, he did, for running away. But in my opinion, that is absolutely not contradictory. Plaintiff admits that he apologized for running away. Entirely consistent testimony. So Deputy Cabrera did nothing other than report what plaintiff admits to. We're talking about disputed facts, and this is a summary judgment against the plaintiff. And so we look at all the facts and the like most favorable to the plaintiff. And that's why we have conceded plaintiff's deposition testimony. And I can go through everything he concedes. All material facts are from his deposition testimony. We are not attempting to dispute any facts. He admits he was there after 10. He admits he was in a group of people that looked like they were underage. He admits that he was asked to leave. Certainly not something that, if he was being targeted, an officer doesn't say move along, get home, to somebody that he believes is underage. He admits that he was walked across the street. He admits that he ran after he was walked across the street. That's – there's reasonable suspicions to stop him. He admits that he committed battery, and that was the thing that he was charged with. Yes, Your Honor. And as to that, there is a disputed fact. I don't believe that that supports the malicious prosecution claim. The falsification of report claim was dismissed and not appealed. Well, it's a disputed fact whether he pushed the cop, isn't it? He says he didn't. The cop says he did. But he was arrested for both 148 and battery on a police officer. That's okay on the arrest, but the prosecution was just for pushing the cop, wasn't  Yes, Your Honor. That's what the prosecutor elected to proceed on, completely and totally out of the control of Deputy Hoagland. Any other questions? I see my time is up. Thank you. Thank you, counsel. Thank you. On the malicious prosecution claim, a Section 1983 malicious prosecution claim requires that the state law elements of malicious prosecution be pled, and there as well be a violation of some Federal right. Those are all present here. A police officer certainly can initiate a prosecution by submitting a police report to a prosecutor. If that weren't the case, you'd have the absurdity of saying that a cop can't ever initiate malicious prosecution, and only a prosecutor can. That just isn't the way it works. Let me say that again. I didn't follow the argument for why that's absurd. It would be absurd because the law is. When a client came into my law office and said, I want you to sue somebody for me, I'd say yes or I'd say no. I thought prosecutors did the same thing with policemen. Sure they do. But, nevertheless, police officers cause the initiation of a prosecution by coming into a prosecutor. If they come in with something that's baloney, they get stuck with a Section 1983 malicious prosecution claim. Police officers all the time are sued for Section 1983 malicious prosecution claims, and there is no case of which I know, and I've read a lot of them, that stands for the legal proposition that a police officer can't be sued for malicious prosecution because it's legally impossible for a police officer to initiate. Is there a case that focuses, that answers that question where the question was raised? I'm not aware of one. I have. Usher just goes right past it. It doesn't consider it. Usher's the law, and Usher does. But Usher doesn't deal with that question. Nobody raised it. It does go past it. My recollection is that the Ninth Circuit case of Devereaux, D-E-V-E-R-E-A-U-X v. Abbey, A-B-B-E-Y. I'm real familiar with that case. I know you are. And I think it's a 262F3rd, or maybe 261, deals with that. And, you know, for this Court to hold that a police officer couldn't be a proper defendant. And you're not relying on what I said in Devereaux because I wound up on the short end. That's why I cited it to you. There are other cases that stand for that, but I can't think of them offhand. The elements, however, are initiation or causing initiation, want of probable cause, and a favorable termination. The malice can be inferred from the want of probable cause. However, it's unclear to me whether or not malice any longer is required because it's a subjective component, and you can't have the — you're not required to have or can't have a subjective component. Let me get back to the initiation. The reason it's troubling me is that my understanding is that prosecutors really do exercise independent judgment. Not in the world I live in. Perhaps on some other planet. Prosecutors do what cops do. Alaska's not on another planet. Pardon me? Alaska's not on another planet. But Bellflower is. Close to it. I'm thinking, suppose a cop does come in to the prosecutor with two charges. A and B. And the cop thinks the case is more solid on A. The prosecutor, maybe for bad reasons, thinks it's more solid on B. And he just prosecutes on B because he thinks it will be easier. The judgment isn't independent when the police officer misleads the prosecutor. That's the law. So the issue is, disputed issue of fact, did the police officer mislead the prosecutor? That's a disputed fact. That's an issue. The favorable termination. What is it any different from the plaintiff, well, like the Kobe Bryant case, plaintiff in a rape case who says it was rape, defense is consent, and the jury is back. We just had one in my town like this. The jury is back in a half hour. They say obviously it was consent. Well, putting aside the fact that that was Colorado, which I don't know much about, there you have something that actually happened. There was sexual intercourse. It's a much closer case. Here there's something that never happened, just didn't exist. There there was sexual intercourse, and it's a much, much closer case, and it's still an issue for the jury. Is the complaining witness in that case subject to a malicious prosecution? Sure. Sure. Whether or not it could ever be one, I doubt it, because it's much closer and it's got to do with people's perceptions. But this just never happened. It was made up out of whole cloth. The local case that I'm thinking of, that's what the jury thought happened. It was made up. It was fabricated. The whole thing was alive by the complaining witness. And I don't know if it was on in Alaska, either. I've never been there. But I thought she had an immunity. No. You're confusing that respectfully, I think, with Briscoe v. If you do something before that, you don't reason backwards and say just because someone takes this stand and tells the same lies that they told in the police report, you reason back and it covers the police report. I know you're right about that case being for testimonial immunity. That's all. And you're saying there's no immunity for the report. That's absolutely correct. Let me quickly cover the other points. Favorable termination. I heard during the prior argument Judge Collins mentioned that he believed somebody had, there had been an 11-to-1 verdict. That was in this case. The jury decided 11-to-1 to acquit the plaintiff. The judge heard all the testimony. And then based on what the judge heard and the 11-to-1 of which the judge knew, the judge granted the dismissal. That's why it's a favorable termination. And that issue was met here also. There's no qualified immunity on anything because all of the facts are in dispute. And under the Saucier v. Katz analysis, there are three things you go through. One, is the constitutional violation pled? Of course there is. Two, was the law clearly established at the relevant time? Of course it was. And three, could a reasonable police officer have believed that she or he was doing that which was right and wasn't doing that which was wrong? No reasonable police officer could believe that trumping up facts and telling lies would be correct. I think for the Saucier analysis, we assume that the kid did not push the cop, don't we? Of course. Of course. So if you assume that, which you have to because he gets, the plaintiff gets the benefit of all the favorable inferences. If you assume that, it's a jury issue and that's the end of it. So the plaintiff wins, the defendants lose, and they get to go to trial in front of Judge Cooper, which isn't all bad. I don't have anything more to say unless there are any questions. Thank you, counsel. You're welcome. Choya v. Baca is submitted.
judges: Kleinfeld, Wardlaw, Collins